IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL D. RUSS,

    Plaintiff,

v.

CHARLES TRUITT,

    Defendant.

Case No. 3:22-CV-02125-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court in this habeas case is a Motion to Stay the Proceedings filed by Petitioner Carl D. Russ ("Russ"). (Doc. 32). Russ seeks a stay so that he may return to state court to raise "possible viable constitutional claims" that were not previously raised there. For the following reasons, this motion is denied.

## BACKGROUND

This case has an extensive procedural history spanning more than 16 years. The facts necessary to decide Russ's motion are presented in two decisions from the Illinois Appellate Court. *See* 28 U.S.C. § 2254(e)(1) (state court's factual findings are "presumed to be correct"); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

    1. <u>Trial and Direct Appeal</u>

On September 17, 2008, Russ was charged with one count of criminal sexual assault under 720 ILCS 5/12-13(a)(3) and one count of aggravated criminal sexual abuse under 720 ILCS 5/12-16(b). (Doc. 17-14 at 1, post-conviction appeal decision). On

December 19, 2008, the State filed an amended information charging Russ with two additional counts of criminal sexual assault and 22 additional counts of aggravated criminal sexual abuse. *Id.* These charges arose out of Russ's abuse of his stepson between June and September 2008. *Id.*

On December 22, 2008, Russ pled guilty to one count of criminal sexual assault (Count III in the amended information). *Id.* The plea agreement called for the remaining 25 counts in the information to be nol-prossed (abandoned). *Id.* Russ was sentenced to 12 years in the custody of the Illinois Department of Corrections ("IDOC") and two years of mandatory supervised release, consistent with the State's recommendation. *Id.*

On January 16, 2009, Russ filed a *pro se* motion to withdraw his guilty plea, alleging that he had received ineffective assistance of counsel. *Id.* The trial court held a hearing on Russ's motion where Russ testified and acknowledged that if he withdrew his plea, the 25 charges that were nol-prossed "would come back up." *Id.* During a colloquy at the hearing, Russ also stated: "I don't care. I want to face [the nol-prossed charges]. I want to face them. I've been in Harrisburg all my life and I ain't never been in trouble. Prove me guilty. In the name of Jesus prove me guilty." *Id.* at 2.

The Appellate Court ultimately permitted Russ to withdraw his guilty plea, allowing him to proceed to trial. *Id.* It is undisputed that the State never formally refiled the nol-prossed charges or otherwise sought to reinstate them before trial. *Id.* However, the trial record contains numerous indications that the nol-prossed charges were tried, and Russ and his trial counsel actively participated in the trial with that understanding. *Id.*

On August 24, 2011, the jury found Russ guilty on all 26 counts. *Id.* On August 29, 2011, Russ's counsel filed a motion for a new trial raising a suppression issue and various evidentiary objections and renewing his motion for a directed verdict. *Id.* On September 21, 2011, Russ filed his own *pro se* motion for a new trial alleging that he had been denied effective assistance of counsel at trial. *Id.* Russ's *pro se* motion alleged that his trial counsel never discussed certain discovery materials with him, failed to present two medical reports that he claimed were favorable to his case, and failed to call 16 witnesses at trial that may have presented favorable evidence, even though some of these witnesses testified for the State. *Id.*

While these motions were pending, Russ was sentenced to three consecutive 13-year terms of imprisonment on the criminal sexual assault convictions and five years for each aggravated criminal sexual abuse conviction, to be served concurrently with each other and concurrent with the three consecutive terms of imprisonment for the criminal sexual assault convictions. *Id.* at 2-3. On February 14, 2012, the trial court denied Russ's August 24, 2011, motion for a new trial (the first one filed by his trial counsel). *Id.* at 3. Then, on July 1, 2011, the trial court held a hearing on Russ's *pro se* allegations of ineffective assistance of counsel. Two days later, the trial court denied Russ's *pro se* motion alleging ineffective assistance, finding that it "lacked merit and pertained to matters of trial strategy." *Id.* Russ's direct appeal only raised one issue: whether the trial court erroneously denied his *pro se* motion for a new trial based on ineffective assistance. *Id.* The Appellate Court affirmed the trial court's judgment on June 1, 2016. (Doc. 17-6, direct appeal decision).

2. Post-Conviction Proceedings in State Court

In June 2016, Russ began inquiring about whether the State had ever formally reinstated the nol-prossed charges before his trial. (Doc. 17-4 at 3). After it became clear to Russ that that had not happened, he filed a petition for relief from judgment under 735 ILCS 5/2-1401(f), arguing that his convictions on Counts I, II, and IV through XXVI were void and that his convictions on those counts violated his right to due process. *Id.* The trial court rejected Russ's arguments, and although Russ appealed this decision, he later moved to dismiss his appeal, which the Appellate Court allowed. *Id.*

On June 5, 2017, Russ filed a *pro se* post-conviction petition in state court. *Id.* Then, with counsel appointed, Russ filed an amended petition, which argued that (i) the convictions for Counts I, II, and IV through XXVI were void because those counts had been dismissed and were never reinstated; (ii) trial counsel was ineffective for failing to raise the issue; and (iii) appellate counsel was ineffective for not raising the issue in Russ's direct appeal. *Id.* The trial court dismissed the amended petition for post-conviction relief on March 4, 2019. *Id.* at 3-4.

Russ appealed the trial court's dismissal of his post-conviction petition, arguing that (i) appellate counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal; (ii) trial counsel was ineffective for not objecting to the scope of the charges against him at trial, which included the 25 nol-prossed counts; and (iii) trial counsel's ineffectiveness violated his due process rights. *Id.* at 4. On February 1, 2022, the Appellate Court rejected these arguments, finding that trial counsel did not provide ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 7. The court

"acknowledge[d] the fact that the State did not refile or seek reinstatement of the nol-prossed charges," but found that Russ was not prejudiced by this clerical error because "[h]ad defense counsel objected, the State could simply have asked the trial court to reinstate the charges." (Doc. 17-14 at 6, 7). And because Russ was unable to show that his trial counsel was ineffective, he necessarily could not establish appellate counsel's ineffectiveness for failing to raise the issue on direct appeal. *Id.* at 7.

    3. <u>Federal Habeas Petition</u>

Russ filed the instant federal habeas petition in this Court on September 12, 2022. (Doc. 1). The petition names Warden Charles Truitt as a defendant and raises the following four grounds for relief:

- **Ground 1:** Improper prosecution on 25 "uncharge[d] offenses."

- **Ground 2:** "Ineffective [assistance] of trial counsel for failure to object to the reinstated uncharge[d] offenses."

- **Ground 3:** "Ineffective [assistance] of appellate counsel for not arguing the failure of trial counsel . . . to object to the (25) uncharge[d] offenses not being reinstated properly."

- **Ground 4:** The state trial and appellate courts lacked jurisdiction over the nol-prossed charges on which Russ was convicted.

(Doc. 2 at 9-15). On August 7, 2023, Russ filed his first motion to stay his federal habeas case so that he may exhaust certain additional claims in state court. (Doc. 27). The Court denied that motion on August 23, 2023, because Russ "d[id] not provide any good cause for his failure to previously exhaust these claims in state court" and because "the motion is unclear as to what specific claims [he] seeks to exhaust in his state court post-conviction proceeding if this action was stayed." (Doc. 29). The Court offered Russ an opportunity

to file a renewed motion to stay that more clearly outlined the claims he wished to exhaust in state court and that provided "good cause for [his] failure to previously exhaust these claims." *Id.*

On October 12, 2023, Russ filed the instant motion to stay his federal habeas case. (Doc. 32). His motion sets forth the following four unexhausted claims that he wishes to present in state court:

> ➢ **Claim 1:** The trial court "vindictively" imposed a "trial tax" by sentencing him to three times the length of his original 12-year sentence, which was based on the December 2008 plea agreement. *Id.* at 3-4.
>
> ➢ **Claim 2:** Trial counsel was ineffective for failing to object to this "trial tax" and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. *Id.* at 4.
>
> ➢ **Claim 3:** 24 of the 26 counts on which he was convicted were not presented to a grand jury in violation of his due process rights. *Id.* at 6.
>
> ➢ **Claim 4:** Trial counsel was ineffective for failing to object to the lack of a grand jury presentment and probable cause finding concerning the 24 counts mentioned in Claim 3, and appellate counsel was ineffective for failing to raise trial counsel's omission on this issue. *Id.*

Defendant Truitt filed a response in opposition to Russ's motion to stay on October 27, 2023. (Doc. 34), and Russ filed a reply on January 2, 2024. (Doc. 38).

## DISCUSSION

District courts may, in their discretion, stay federal habeas proceedings to allow petitioners to exhaust meritorious claims in state court. *Rhines*, 544 U.S. 269, 276 (2005). Such rulings, however, "should be available only in limited circumstances" because

"granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts." *Id.* at 277. For that reason, a petitioner must demonstrate that there was "good cause" for his failure to exhaust the subject claims in state court, and that the claims in question are not "plainly meritless." *Id.*

Here, Russ seeks to return to state court to exhaust Claims 1 through 4, which concern the length of his sentence and claimed procedural shortcomings of the State's case against him. It is undisputed that these claims were not presented to the state courts during Russ's direct appeal or in his petition for post-conviction relief. Nor can it reasonably be disputed that Claims 1 through 4 are based on events that occurred before trial (lack of grand jury presentment and probable cause finding) and immediately after trial (sentencing). Thus, it is incumbent upon Russ to demonstrate good cause for his failure to exhaust these claims on direct appeal or in his motion for post-conviction relief.

The Seventh Circuit addressed a similarly postured case in *Yeoman v. Pollard*, 875 F.3d 832 (7th Cir. 2017). In that case, the petitioner was serving a 25-year sentence after pleading "no contest" to a charge of attempted first degree intentional homicide. *Id.* at 833-34. After a direct appeal and two habeas petitions were unsuccessful in state court, the petitioner filed a petition for a writ of habeas corpus in federal court claiming that (i) his appellate counsel was ineffective for not filing an appeal with the Wisconsin Supreme Court after the Wisconsin Court of Appeals had rejected his arguments on direct appeal; (ii) the failure to file a petition for review in the Wisconsin Supreme Court on direct appeal effectively prevented him from seeking federal habeas review of the issues raised in the direct appeal; and (iii) a local rule that reserved an appellate avenue for

indigent persons violated his right to equal protection. *Id.* at 835. The district court and the Seventh Circuit accepted these claims as fully exhausted. *Id.* Then, however, the petitioner filed a second federal habeas petition in which he argued that (i) his plea was unknowing; (ii) trial counsel was ineffective; and (iii) post-conviction counsel was ineffective. These claims were unexhausted. *Id.* The petitioner asked the district court to stay his second federal habeas petition "until it ruled on his first petition . . ., so that he could commence state court post-conviction proceedings to exhaust his remaining claims if his first petition failed." *Id.* at 836.

The district court denied the requested stay because the petitioner "had not demonstrated good cause for his failure to exhaust" and because his failure to exhaust was "intentional." *Id.* The Seventh Circuit affirmed the district court's judgment that the petitioner's "unsound strategy of splitting claims, based perhaps on a lack of legal knowledge, could not establish good cause because virtually any *pro se* prisoner could meet that standard." *Id.* at 838. And "[a]llowing for a stay in this situation would be contrary to the Supreme Court's directive that "stay and abeyance should be available only in limited circumstances."" *Id.* (quoting *Rhines*, 544 U.S. at 277). The petitioner's strategy, according to the Seventh Circuit, was a classic example of "claim-splitting," which was inherently inconsistent with the Antiterrorism and Effective Death Penalty Act's goal of "streamlining habeas proceedings." *Id.* (emphasis omitted).

*Yeoman* is binding here. Russ presented his initial federal habeas petition, raising four grounds for relief based on his conviction and sentence on the 25 nol-prossed charges. There can be no serious doubt that these claims were developed by the time Russ

was sentenced. His unexhausted claims likewise are based on events that took place before trial (lack of a grand jury presentment and probable cause finding) and shortly thereafter (sentencing). Thus, these claims too are based on events that were within the trial record and available for litigation on direct appeal and during his first motion for post-conviction relief in state court. And because all of these claims were available to him in state court, yet only some were exhausted, it permits an inference of claim-splitting that is barred under *Yeoman*.[1]

Russ counters that he could not have exhausted Claims 1 and 2 before filing his habeas petition in federal court because they were not available to him until the Illinois Appellate Court's decision in *People v. Garcia*, 236 N.E.3d 488 (Ill. App. Ct. 2023), was issued on March 31, 2023, several months after he filed his federal habeas petition. Claim 1, as noted, asserts that the trial court "vindictively" imposed a "trial tax" in the form of a sentence that was three times as long as the sentence he received pursuant to his plea agreement, whereas Claim 2 alleges that trial and appellate counsel were ineffective for not raising the issue. Russ argues that *Garcia* establishes good cause for his failure to exhaust Claims 1 and 2 because the Appellate Court in that case reaffirmed the long-standing principle that "a court may not penalize a defendant for asserting his right to a

---

[1] Although the Court's decision to deny a stay is based on Russ's inability to demonstrate good cause for his failure to exhaust, it is skeptical that a state court would even entertain the merits of his unexhausted claims because they were available to him by the time he filed his direct appeal. The Illinois Supreme Court recognizes that "issues that could have been raised on direct appeal but were not, are forfeited." *People v. Petrenko*, 931 N.E.2d 1198, 1204 (Ill. 2010). This means that issues that are "based entirely on facts contained in the trial record," as Claims 1 through 4 are, would likely be deemed forfeited by an Illinois state court. *Id.* Thus, with respect to the unexhausted ineffective assistance of counsel claims, this Court would presumably not have the authority to grant habeas relief because an "ineffective-assistance claim [that] was not preserved in state court . . . cannot furnish the basis for a writ of habeas corpus" in federal court. *Szabo v. Walls*, 313 F.3d 391, 397 (7th Cir. 2002).

trial either by the court or by a jury." *Garcia*, 236 N.E.3d at 506 (quoting *People v. Ward*, 499 N.E.2d 422, 425 (Ill. 1986)). Thus, so Russ's argument goes, *Garcia* put him on notice of his right not to be penalized for choosing to go to trial. And because *Garcia* was decided after Russ filed his federal habeas petition, it demonstrates good cause for his failure to exhaust Claims 1 and 2.

In *Garcia*, the defendant, after being charged with three counts of aggravated criminal sexual assault and one count of aggravated kidnapping, participated in a plea negotiation with the State and the trial court, where the trial court recommended a sentence of 36 years. *Id.* at 504. The defendant elected to go to trial and was convicted. *Id.* At that point, however, the court sentenced him to 100 years in prison, nearly three times the recommended sentence from the plea negotiation. *Id.* The Appellate Court found that this sentence reflected a "penal[ty] for exercising his right to trial," given the significant disparity between the trial court's recommended sentence at the plea negotiation, and its imposed sentence after trial. *Id.* at 512. This disparity effectively converted a sentence that would have allowed the defendant to be released in his fifties into a life sentence. *Id.* at 510. And because the trial court hadn't articulated its reasons for this significant disparity, the Appellate Court drew the inference of an impermissible trial tax. *Id.* at 509.

On its face, *Garcia* can be read to support Russ's claim that the trial court imposed a trial tax in the form of a longer sentence after he elected to withdraw his guilty plea and proceed to trial. After all, Russ's sentence was more than tripled from 12 years following his guilty plea to 39 years after he was tried, convicted, and sentenced. But what is also apparent from *Garcia* is that it broke no new ground for criminal defendants in Illinois.

*Garcia* cites the American Bar Association's Standard for Criminal Justice No. 14-1.8(b) for the proposition that "a defendant should not be punished for exercising his constitutional right to trial." *Id.* at 508. In Illinois, that principle was first adopted in *Ward*, 499 N.E.2d at 425, and *Garcia* cites a plethora of authorities from Illinois and other states that have followed Standard No. 14-1.8(b). *Id.* For instance, *Garcia* relies on the following discussion from the Illinois Appellate Court's 1993 decision in *People v. Scott* to contextualize the operation of this principle:

> The trial judge offered a sentence of 10 years if defendant would plead guilty. There is no explanation as to why the sentence was tripled when defendant was found guilty after choosing to go to trial. While it is not proper for the reviewing court to substitute its own judgment for that of the trial court absent an abuse of discretion, such an abuse would be found if it were to be shown that the enhanced sentence was in retaliation for rejecting a plea offer. Consequently, if the new trial results in a guilty verdict, the sentencing judge should give proper consideration to the previous sentencing offer, even if he is a different judge who did not participate in the prior plea offer.

*Id.* (quoting *People v. Scott*, 628 N.E.2d 456, 464 (Ill. App. Ct. 1993) (cleaned up)). *Garcia* was an *application* of this now apodictic principle that criminal defendants should not be punished for exercising their constitutional right to a jury trial. And considering *Garcia*'s extensive examination of decisional authority applying this principle, there can be little doubt that it did not provide a *new* legal basis for Russ's own post-conviction efforts. Thus, *Garcia*'s observation that a criminal defendant may not be punished for exercising his right to a jury trial in the form of a drastically longer sentence upon conviction does not constitute "good cause" for Russ's failure to exhaust this claim on direct appeal or in

his motion for post-conviction relief in state court.[2]

Finally, the Court is unable to discern a coherent argument establishing good cause for Russ's failure to exhaust Claims 3 and 4. Russ claims that he was "tried on the unconstitutional twenty-four (24) charges, without any judicial finding of probable cause nor a grand jury indictment." (Doc. 32 at 8). He goes on to argue that ""cause" is established by the fundamental miscarriage of justice based on the twenty-four charges being void based on the unconstitutionality of the twenty-four charges rendering [him] innocent thereof." *Id.* at 9. What is conspicuously absent from his motion is any explanation of why these claims were not brought to the attention of the state courts. *See Rhines*, 544 U.S. at 273 ("the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims"). Thus, Russ is unable to demonstrate "good cause" for his failure to exhaust Claims 3 and 4 in state court.[3]

---

[2] A notable distinction between this case and *Garcia* is that in *Garcia*, the trial court was directly involved in plea negotiations. The Appellate Court emphasized this point multiple times in its discussion. First, when it introduced ABA Standard No. 14-1.8(b), the court observed that "[u]nder this approach, to allow for judicial review of a sentence *when the sentencing court was involved in the plea-bargaining process* and imposes a harsher sentence after trial than was offered in exchange for a guilty plea, the sentencing court must specifically point out the factors that justify the increased sentence." *Garcia*, 236 N.E.3d at 508 (emphasis added). The court also distinguished *People v. Walker*, 188 N.E.3d 1235, 1257 (Ill. App. Ct. 2021), where the Illinois Appellate Court declined to draw the inference of an impermissible trial tax, on the basis that, in *Walker*, "the trial court was not involved in the plea-bargaining stage." *Garcia*, 236 N.E.3d at 510. Indeed, *Walker* observed that "[w]here the trial court is not involved in the plea-bargaining process, we emphatically reject the notion that a permissible inference arises that a "trial tax" was imposed instead of the exercise of a trial court's independent discretion at sentencing." *Walker*, 188 N.E.3d at 1257. Here, there is no evidence to suggest that the trial court was involved in the plea negotiations that led to Russ's guilty plea. A plain reading of *Garcia* suggests that this distinction is significant because a trial court that is not involved in a plea negotiation is less likely to impose an impermissible trial tax when the negotiation does not bear fruit.

[3] To the extent that Claims 3 and 4 fault the state courts and Russ's trial and appellate attorneys for not insisting on a grand jury's probable cause determination before charging him with 24 additional counts, this argument is unlikely to provide a basis for federal habeas relief. It is well-settled that the Fifth Amendment's grand jury presentment requirement is not binding on the states. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Thus, "an allegation that an indictment amendment violated [a federal habeas petitioner's] right to be indicted by a grand jury should not be sufficient grounds to grant habeas corpus."

CONCLUSION

For these reasons, Russ's motion to stay this case (Doc. 32) is **DENIED**. The Court will issue a ruling on the substantive merits of Russ's pending habeas petition (Doc. 1) in the ordinary course.

**IT IS SO ORDERED.**

DATED:   September 27, 2024

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

*Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991). Stated differently, "if a defendant has no federal constitutional right to be indicted by a grand jury, it makes no difference as a matter of federal constitutional law if a bill of particulars or an indictment amendment contains facts or charges not found by the grand jury." *Id.* at 478.