IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL D. RUSS,<br><br>    Petitioner,<br><br>v.<br><br>TYRONE BAKER,<br><br>    Respondent. | Case No. 3:22-CV-02125-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Petitioner Carl D. Russ, an inmate of the Illinois Department of Corrections who is currently incarcerated at Hill Correctional Center, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 to challenge the constitutionality of his state convictions arising out of Saline County. (Doc. 1). For the reasons set forth below, the petition is denied.

### BACKGROUND

This case has an extensive procedural history spanning nearly 18 years. The facts necessary to decide Russ's motion are presented in two decisions from the Illinois Appellate Court. *See* Docs. 17-6, 17-14; *see also* 28 U.S.C. § 2254(e)(1) (noting that a state court's factual findings are "presumed to be correct"); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

    1. <u>Trial and Direct Appeal</u>

On September 17, 2008, Russ was charged with one count of criminal sexual

assault under 720 ILCS 5/12-13(a)(3) and one count of aggravated criminal sexual abuse under 720 ILCS 5/12-16(b). (Doc. 17-14 p. 1). On December 19, 2008, the State filed an amended information charging Russ with two additional counts of criminal sexual assault and 22 additional counts of aggravated criminal sexual abuse. (*Id.*). The charges arose out of Russ's abuse of his stepson between June and September 2008. (*Id.*).

On December 22, 2008, Russ pleaded guilty to one count of criminal sexual assault (Count III in the amended information). (*Id.*). The plea agreement called for the remaining 25 counts in the information to be nol-prossed (abandoned). (*Id.*). Russ was sentenced to 12 years in the custody of the Illinois Department of Corrections and two years of mandatory supervised release, consistent with the State's recommendation. (*Id.*).

On January 16, 2009, Russ filed a *pro se* motion to withdraw his guilty plea, alleging that he had received ineffective assistance of counsel. (*Id.*). The trial court held a hearing on Russ's motion where Russ testified and acknowledged that if he withdrew his plea, the 25 charges that were nol-prossed "would come back up." (*Id.*). During a colloquy at the hearing, Russ also stated: "I don't care. I want to face [the nol-prossed charges]. I want to face them. I've been in Harrisburg all my life and I ain't never been in trouble. Prove me guilty. In the name of Jesus prove me guilty." (*Id.* at p. 2).

The Appellate Court ultimately permitted Russ to withdraw his guilty plea, allowing him to proceed to trial. (*Id.*). It is undisputed that the State never formally refiled the nol-prossed charges or otherwise sought to reinstate them before trial. (*Id.*). However, the trial record contains numerous indications that the nol-prossed charges were tried, and Russ and his trial counsel actively participated in the trial with that understanding.

(*Id.*). Notably, at the beginning of trial, the state court judge read into the record each of the 26 counts from the amended information. (*Id.*).

On August 24, 2011, the jury found Russ guilty on all 26 counts. (*Id.*). Five days later, Russ's counsel filed a motion for a new trial raising a suppression issue and various evidentiary objections and renewing his motion for a directed verdict. (*Id.*). On September 21, 2011, Russ filed his own *pro se* motion for a new trial alleging that he had been denied effective assistance of counsel at trial. (*Id.*). Russ's *pro se* motion alleged that his trial counsel never discussed certain discovery materials with him, failed to present two medical reports that he claimed were favorable to his case, and failed to call 16 witnesses at trial who may have presented favorable evidence, even though some of these witnesses testified for the State. (*Id.*).

While these motions were pending, Russ was sentenced to three consecutive 13-year terms of imprisonment on the criminal sexual assault convictions and five years for each aggravated criminal sexual abuse conviction, to be served concurrently with each other and concurrent with the three consecutive terms of imprisonment for the criminal sexual assault convictions. (*Id.* at pp. 2-3). On February 14, 2012, the trial court denied Russ's August 2011 motion for a new trial (the first one filed by his trial counsel). (*Id.* at p. 3). Then, on July 1, 2011, the trial court held a hearing on Russ's *pro se* allegations of ineffective assistance of counsel. Two days later, the trial court denied Russ's *pro se* motion alleging ineffective assistance, finding that it "lacked merit and pertained to matters of trial strategy." (*Id.*). Russ's direct appeal only raised one issue: whether the trial court erroneously denied his *pro se* motion for a new trial based on ineffective

assistance. (*Id.*). The Appellate Court affirmed the trial court's judgment on June 1, 2016. (*Id.*; Doc. 17-6, direct appeal decision).

    2. <u>Post-Conviction Proceedings in State Court</u>

In June 2016, Russ began inquiring about whether the State had ever formally reinstated the nol-prossed charges before his trial. (Doc. 17-14 p. 3). After it became clear to Russ that that had not happened, he filed a petition for relief from judgment under 735 ILCS 5/2-1401(f), arguing that his convictions on Counts I, II, and IV through XXVI were void and that his convictions on those counts violated his right to due process. (*Id.*). The trial court rejected Russ's arguments, and although Russ appealed this decision, he later moved to dismiss his appeal, which the Appellate Court allowed. (*Id.*).

On June 5, 2017, Russ filed a *pro se* post-conviction petition in state court. (*Id.*). Then, with counsel appointed, Russ filed an amended petition, which argued that (i) the convictions for Counts I, II, and IV through XXVI were void because those counts had been dismissed and were never reinstated; (ii) trial counsel was ineffective for failing to raise the issue; and (iii) appellate counsel was ineffective for not raising the issue in Russ's direct appeal. (*Id.*). The trial court dismissed the amended petition for post-conviction relief on March 4, 2019. (*Id.* at pp. 3-4).

Russ appealed the trial court's dismissal of his post-conviction petition, arguing that (i) appellate counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal; (ii) trial counsel was ineffective for not objecting to the scope of the charges against him at trial, which included the 25 nol-prossed counts; and (iii) trial counsel's ineffectiveness violated his due process rights. (*Id.* at p. 4). On February 1, 2022, the

Appellate Court rejected these arguments, finding that trial counsel did not provide ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). (*Id.* at p. 7). The court "acknowledge[d] the fact that the State did not refile or seek reinstatement of the nol-prossed charges," but found that Russ was not prejudiced by this clerical error because "[h]ad defense counsel objected, the State could simply have asked the trial court to reinstate the charges." (*Id.* at pp. 6-7). And because Russ was unable to show that his trial counsel was ineffective, he necessarily could not establish appellate counsel's ineffectiveness for failing to raise the issue on direct appeal. (*Id.* at p. 7).

3. <u>Federal Habeas Petition</u>

Russ filed the instant federal habeas petition in this Court on September 12, 2022. (Doc. 1). The petition raises the following four grounds for relief:

- **Ground I:** Improper prosecution on 25 "uncharge[d] offenses."

- **Ground II:** "Ineffective [assistance] of trial counsel for failure to object to the reinstated uncharge[d] offenses."

- **Ground III:** "Ineffective [assistance] of appellate counsel for not arguing the failure of trial counsel . . . to object to the (25) uncharge[d] offenses not being reinstated properly."

- **Ground IV:** The state trial and appellate courts lacked jurisdiction over the nol-prossed charges on which Russ was convicted.

(*Id.* at pp. 9-15). On August 7, 2023, Russ moved to stay the case so that he could return to state court to exhaust certain additional claims. (Doc. 27). The Court denied that motion on August 23, 2023, because Russ "d[id] not provide any good cause for his failure to previously exhaust these claims in state court" and because "the motion is unclear as to what specific claims [he] seeks to exhaust in his state court post-conviction proceeding if

this action was stayed." (Doc. 29). The Court offered Russ an opportunity to file a renewed motion to stay that more clearly outlined the claims he wished to exhaust in state court and that provided "good cause for [his] failure to previously exhaust these claims." (*Id.*).

On October 12, 2023, Russ filed another motion to stay his federal habeas case. (Doc. 32). The Respondent opposed his request. On September 27, 2024, the Court denied the motion, concluding that his request amounted to impermissible claim-splitting and he had failed to establish good cause for failing to raise the claims in state court previously. *See Russ v. Truitt*, No. 22-02125, 2024 WL 4333374, at *5 (S.D. Ill. Sept. 27, 2024).

## LEGAL STANDARD

Under Section 2254, a district court shall review an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring)).

Habeas relief is restricted to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"[A] decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010)). Any "determination of a factual issue made by a State court shall be presumed to be correct," and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Even an incorrect or erroneous application of federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable . . . so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been

"objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal citations omitted).

### DISCUSSION

*a. Exhaustion*

Respondent argues that Claims I, II, and IV of Russ's petition are procedurally defaulted because he failed to present them to the Illinois courts for one complete round of review. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) requires that "state prisoners give state courts a *fair* opportunity to act on their claims." *Id.* at 844. Because state courts are also required to enforce federal law, when a prisoner claims his continued confinement for a state court conviction violates federal law, the state court should have the first opportunity to hear the claim and provide any relief. *Id.* This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845; *see also McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) (finding claims brought under Section 2254 to be procedurally defaulted where petitioner failed to assert federal claim through one complete round of state court review); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (noting a petitioner is "required to raise the claim at each level of state court review: in his initial post-conviction petition before the trial court, in his appeal to the Illinois Appellate Court, and in his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court").

Respondent clearly is correct that Russ defaulted on Claim IV, which focused on the state courts' jurisdiction. He did not raise that claim either in his direct appeal or in his post-conviction petition. (Docs. 17-7; 17-25). In his reply brief, Russ asks the Court to excuse his default. But even if the Court were to do so, he would not be entitled to relief. As Respondent notes, Russ's claim that the state court lacked jurisdiction implicates questions of state law. This Court, of course, lacks the authority to issue a writ of habeas corpus based on a state court's interpretation of its own laws. *Jones v. Hendrix*, 599 U.S. 465, 490 (2023); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Weisheit v. Neal*, 151 F.4th 855, 879 (7th Cir. 2025). Russ therefore is not entitled to relief on that ground.

Respondent's assertion that Claims I and II are unexhausted merits some attention. In those claims, Russ asserts that his prosecution on the 25 nol-prossed charges was improper, and his trial counsel was ineffective for failing to raise the issue. The essence of Respondent's exhaustion argument is that Russ's post-conviction appeal only raised the ineffective assistance of his *appellate* counsel (Claim III) but not the other two issues. (Doc. 16 pp. 8-9). In support of that position, Respondent cites the Seventh Circuit's holding that a claim that "one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

That statement of law is correct, but it is not altogether clear from Russ's state court briefing that he failed to present those claims in that forum. Certainly, his primary claim dealt with the performance of his appellate counsel, but his briefing undeniably dealt with the logically connected issues of whether proceeding on the nol-prossed counts

violated his rights and whether trial counsel was ineffective for failing to object. In his appeal of the trial court's dismissal of his post-conviction petition, Russ argued explicitly that the trial court erred in dismissing the petition "where the petition showed that" Russ was prosecuted on the nol-prossed charges, trial counsel failed to object, and appellate counsel failed to press the matter on direct appeal. (Doc. 17-15 p. 6). Whether Russ properly preserved the arguments in his PLA is a more difficult question; his focus clearly was on the appellate court's conclusion that his counsel on direct appeal was not ineffective. (Doc. 17-18 p. 3). Again, however, it is difficult to disentangle from his petition whether he was attempting to parse the issues as separate claims.

That difficulty may partially explain the Seventh Circuit's holding in *Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008). There, as here, the State argued a habeas petitioner's ineffective assistance of trial counsel claim was procedurally defaulted because it had not been framed independently from the claim appellate counsel had been ineffective for failing to raise that claim. 538 F.3d at 753–54. The court concluded that a "fair reading of the record" indicated the petitioner had fairly presented his claim to the state courts because his petition made clear that his ineffective appellate counsel argument was a means to "seek[] redress of his trial counsel's failures." *Id.* One district court has summarized *Malone* as holding that "a petitioner does not procedurally default his claim that trial counsel was ineffective by not raising that claim on appeal if his appellate counsel was also ineffective (in not raising the ineffectiveness claim)." *Wilmington v. Williams*, No. 16-3787, 2023 WL 2306826, at *9 (N.D. Ill. Mar. 1, 2023); *see also Scott v. Butler*, No. 13-08256, 2016 WL 8671908, at *6 (N.D. Ill. June 17, 2016) ("[F]ederal habeas review is

not precluded in circumstances where it is clear that the petitioner raises ineffective assistance of appellate counsel as a means for the court to excuse procedural default and reach a claim for ineffective assistance of trial counsel.").

In light of the difficulties attendant to ascertaining whether Russ properly exhausted these claims, the Court finds that the interests of judicial economy would be served by proceeding to the merits. *See Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016); *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) ("[I]t makes sense (and is permissible) to reject a collateral attack on the merits while other procedural defenses, such as waiver, default, or lack of exhaustion, remain in the background."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### b. Claim I

Russ first asserts that his convictions must be vacated because he was "prosecuted on 25 uncharge[d] offenses." (Doc. 1 p. 9). He does not specify what right he believes the State violated in his case. However, in his brief before the Illinois Appellate Court, he argued that the prosecution and conviction on the nol-prossed charges abridged his due process rights under the Fifth and Fourteenth Amendments. (Doc. 17-15 p. 16).

In conjunction with Russ's initial plea of guilty to Count III of the amended information, the State agreed to "nol-pros" the remaining 25 charges. That term is short for "nolle prosequi," which in Latin means "not to wish to prosecute." *Nolle prosequi*, Black's Law Dictionary (12th ed. 2024). As the Illinois Appellate Court explained in its

opinion on Russ's post-conviction petition, "[a] *nolle prosequi* is a formal entry of record by the State which indicates its unwillingness to prosecute a charge." *People v. Russ*, 2022 IL App (5th) 190240-U, ¶ 33 (Ill. Ct. App. Feb. 1, 2022) (citing *People v. Hughes*, 2012 IL 112817, ¶ 22 (2012)). The court went on to note that

> A *nolle prosequi* is not an acquittal of the underlying conduct that served as the basis for the original charge. Rather, it leaves the matter in the same condition as before the prosecution commenced. Thus, if a *nolle prosequi* is entered before jeopardy attaches, the State may prosecute the defendant again, subject to other relevant statutory or constitutional defenses and absent a showing of harassment, bad faith, or fundamental unfairness. Procedurally, the State may either refile the nol-prossed charges or request that the trial court vacate the previous *nolle prosequi* order and reinstate the charges.

*Id.* ¶ 34 (citations omitted).

All concede that the state prosecutor never formally moved to reinstate the nol-prossed charges. The Illinois Appellate Court, however, emphasized that no due process concerns attributable to this were evident from the record here. The court observed that there was extensive evidence Russ understood he was proceeding to trial on all 26 charges.

Russ does not make any meaningful attempt to explain how the Illinois court erred in its due process analysis. Apart from Fourth Amendment protections, the federal constitution dictates few specifics about the initiation of state criminal proceedings. For instance, state defendants are not guaranteed the right to be indicted by a grand jury. *Hurtado v. California,* 110 U.S. 516, 538 (1884); *Holman v. Gilmore*, 126 F.3d 876, 884 (7th Cir. 1997). Additionally, "a judicial hearing is not prerequisite to prosecution by information." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Instead, the constitutional minimum is the

general due process standard that "a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges." *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991); *Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014).

Russ cannot credibly claim to have lacked notice of the 25 charges the State neglected to formally reinstate. Consider just a few examples from the record: At the initial change of plea hearing, Russ confirmed that if the court were to grant a motion to withdraw his guilty plea, the nol-prossed charges would be reinstated. Then, during the hearing on the motion to withdraw his guilty plea, he testified that he was "ready" and "want[ed] to face" the 26 charges. And at the start of his trial, the court read each of the 26 counts from the amended information into the record. Russ has offered no convincing rationale to elevate what was essentially a technical error to constitutional proportions. *Cf. Smith v. Cook Cnty.*, No. 22-2969, 2023 WL 4735553, at *2 (7th Cir. July 25, 2023) (rejecting inmate's claim that the failure of every grand juror to sign his indictment violated the Constitution because he did not allege that he lacked adequate notice of the charges). Russ's position seems to be that due process required the State to either re-file the charges or ask the Court to vacate its previous *nolle prosequii* order and reinstate the charges. The Court is unaware of any federal law dictating that procedure. Thus he is not entitled to relief on this claim.

### c. Claims II and III

That leaves Russ's claim that his trial counsel performed deficiently when he failed to object to proceeding on the charges that had been nol-prossed and his related claim that his appellate counsel should have raised the issue.

A Sixth Amendment claim of ineffective assistance of counsel is analyzed under the Supreme Court's familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms.'" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). The petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

However, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) modified the standard for cases, like this one, where the state courts have already rejected the ineffective assistance claim. *See* 28 U.S.C. § 2254(d). A federal court's review is "doubly deferential" — to the state court and to defense counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Ford v. Reagle*, 154 F.4th 884, 894 (7th Cir. 2025). In concrete terms, this means a court may not grant relief unless "*every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 740 (2021) (cleaned up).

The Court's conclusion above that Russ was not deprived of his right to due process does not necessarily dictate the result on these claims. After all, an attorney may perform deficiently by neglecting to raise a meritorious state law argument. *See Jones v. Zatecky*, 917 F.3d 578, 581 (7th Cir. 2019) (citing *Mason v. Hanks*, 97 F.3d 887, 894 (7th Cir. 1996)). It is possible that as a matter of Illinois law, the state's failure to reinstate the nol-prossed charges would have been a worthy subject for counsel to exploit.

Here, however, little further analysis is needed. The Illinois Appellate Court held that if defense counsel had objected to the State's decision to proceed on the nol-prossed charges, "the State could simply have asked the trial court to reinstate the charges." (Doc. 17-14 p. 7). Given the Illinois court's conclusion that Russ's state law argument was a non-starter, this Court can conclude that it would have been rejected on direct appeal. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).[1] Counsel therefore was not ineffective for failing to raise it at any stage of the proceedings, and the Illinois courts did not misapply federal law in rejecting Russ's ineffective assistance claims. *See Warren v. Baenen*, 712 F.3d

---

[1] In his reply brief, Russ asserts that his counsel could have objected to the reinstatement of the nol-prossed charges by arguing the prosecutor's decision demonstrated "harassment, bad faith, or fundamental unfairness." *Hughes*, 2012 IL 112817, ¶ 23, 983 N.E.2d at 448 (quoting *People v. Norris*, 214 Ill. 2d 92, 104, 824 N.E.2d 205, 213 (2005)). He did not develop an argument before the state courts that such conduct was the true motive here, and the record belies such a claim.

Russ locates potential unfairness in the length of his ultimate sentence on all 26 charges compared to his original sentence after his plea. (Doc. 28 pp. 17-18). However, it is not apparent how the *prosecutor's* motives in reinstating the charges can be divined from evidence regarding the length of the sentence imposed *by the trial court*. Moreover, Russ had been warned as a condition of entering the initial plea agreement that all of the charges could be brought back if he were to withdraw successfully, so there is little chance he could demonstrate unfairness here.

1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims.").

## CONCLUSION

The Petition for Writ of Habeas Corpus filed by Petitioner Carl D. Russ (Doc. 1) is **DENIED**. This civil action is **DISMISSED** with prejudice, and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability is required to appeal from the dismissal or denial of a Section 2254 petition. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 580 U.S. 100, 115 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would debate this Court's ruling that Russ is not entitled to relief on any of his claims. Accordingly, the Court denies a certificate of appealability. Russ may reapply to the United States Court of Appeals for the Seventh Circuit for a certificate of appealability if he wishes to pursue an appeal. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

## NOTICE OF APPELLATE RIGHTS

If Russ wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Russ chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned has already declined to issue a certificate of appealability. So, Russ must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Russ files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Russ cannot

afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Russ plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Russ wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock

for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Russ showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED: January 14, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**